UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **LIBIA ROJO** | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:20-cv-3874 |
| | § | |
| **SANDERSON FARMS, INC.** | § | |
| **(PROCESSING DIVISION)** | § | |
| | § | |
|    Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Libia Rojo, by and through counsel, hereby files suit against Defendant Sanderson Farms, Inc. (Processing Division) ("Sanderson") for violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.*, ("ADA"). When Plaintiff Libia Rojo—a 20-year employee with a good work history—sustained an on-the-job injury and disability, Sanderson refused to provide a reasonable accommodation that would have allowed her to continue working. Instead, Sanderson forced her onto leave without pay, and then terminated her after she complained of disability discrimination.

### JURISDICTION AND VENUE

1. This Court has jurisdiction to hear and decide Ms. Rojo's ADA claim pursuant to 28 U.S.C. § 1331 (federal question) and 1343(a)(4) (civil rights).

2. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and 1391(c), as Defendant Sanderson has extensive and deliberate contacts in this District and Division, including a Sanderson Farms poultry processing plant located at 2000 Shiloh Ave., Bryan, Texas 77803, at which Ms. Rojo worked during her tenure with Defendant.

## PARTIES

3. Ms. Rojo is an individual residing in Brazos County, Texas.

4. Defendant Sanderson Farms is a domestic corporation formed and existing under the laws of the State of Texas, which does business in Brazos County and which has a poultry processing plant in Bryan, Texas, at which Plaintiff was employed. Defendant Sanderson Farms may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## ADMINISTRATIVE EXHAUSTION

5. Ms. Rojo has exhausted the administrative remedies available to her, and all conditions precedent have occurred or been performed.

6. In particular, Ms. Rojo filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 30, 2019 and within 300 days of the occurrence of the acts of which she now complains.

7. The EEOC issued Ms. Rojo a Notice of Right to Sue on August 21, 2020. This Complaint and Demand for Jury Trial is timely filed within ninety days of receipt of that Notice of Right to Sue.

## FACTS

8. Sanderson is a "covered" employer as defined by 42 U.S.C. § 12111(5)(A) of the ADA.

9. Specifically, at all times from at least 2018 to the present, Sanderson has operated in multiple states and processed chickens for distribution and sale throughout the United States. At all relevant times, Sanderson has had more than 500 employees.

10. Ms. Rojo is a 48-year old woman who was employed by Sanderson since approximately 2000. Since 2000, Sanderson gave Ms. Rojo a number of different assignments for Sanderson, all

within the poultry processing plant in Bryan, Texas, handling various aspects of processing and packaging chicken parts for shipment and sale.

11. Ms. Rojo, like many other Sanderson employees, worked doing various tasks in various departments within the poultry processing plant over the course of her nearly twenty years of employment, as Sanderson routinely reassigns workers from one task to another for various reasons.

12. In August 2018, Ms. Rojo was working on the production line in the Pre-Price Department, which required pushing and pulling boxes weighing up to about 75 pounds. On or about August 2, 2018, Ms. Rojo was working when she felt her right shoulder pop and severe pain ensued.

13. From approximately August 3, 2018 until October 4, 2018, Sanderson told Ms. Rojo that it was investigating whether or not Ms. Rojo was eligible for benefits under its workplace injury benefits plan. Over these months, Ms. Rojo saw several physicians selected by Sanderson at Nova Medical Centers, in Bryan, who determined what level and kind of restrictions she would need in order to continue working with her injury. At the time, these restrictions generally consisted of limitations on reaching, pushing, and pulling, and lifting restrictions of 10 to 20 pounds. Ms. Rojo was ultimately diagnosed with torn or damaged rotator cuffs in both shoulders, three torn tendons, and a fractured clavicle.

14. During this same time period, Ms. Rojo continued to work full-time, first in the Overwrap Department labelling chicken trays and gluing boxes, and later in the Pre-Price Department gluing boxes. These assignments accommodated Ms. Rojo's physical limitations, such that she was able to perform them unassisted.

15. On or about October 4, 2018, Sanderson denied Ms. Rojo's claim under its workplace injury benefits plan. At this point, the physicians at Nova Medical Centers had advised Ms. Rojo

against using her right arm to push, pull, or lift for periods of more than three hours, and they also advised against doing any overhead lifting at all.

16. On or about October 4, 2018, Ms. Rojo asked David Jarrett, an Overseer in the Pre-Price Department, if she could remain working in one of the two positions she had been working in unassisted since sustaining her injury.

17. Mr. Jarrett told Ms. Rojo words to the effect of, "you cannot work at Sanderson with restrictions" and that Sanderson had only been accommodating her restrictions up until that time because she had a pending workplace injury claim. Mr. Jarrett told Ms. Rojo at that meeting that she could choose between taking unpaid leave under the Family and Medical Leave Act, or she could be fired. Ms. Rojo elected to take unpaid leave so she would not be fired.

18. Ms. Rojo continued to receive medical treatment, including imaging and physical therapy, over the course of the next several months, which culminated in Ms. Rojo undergoing shoulder surgery to repair her torn rotator cuff on February 28, 2019. From February 28, 2019 until May 19, 2019, Ms. Rojo was recovering from her shoulder surgery and unable to work.

19. On May 20, 2019, Doctor Michael James Connally wrote a note releasing Ms. Rojo to return to work, so long as she did no lifting over ten pounds, and no overhead lifting.

20. On or about May 21, 2019, Ms. Rojo met with Sanderson Personnel Supervisor Teresa Gonzalez, gave her Dr. Connally's note regarding her physical limitations, and asked to return to work with an assignment to tasks that would accommodate her physical limitations.

21. Ms. Gonzalez told Ms. Rojo words to the effect of "accommodations caused by restrictions are not allowed per company policy."

22. Ms. Rojo persisted and scheduled a meeting with Sanderson Field Employee Relations Manager Yesenia Luna on June 4, 2019. In this meeting, Ms. Rojo identified several positions that

she had previously performed in her tenure at Sanderson on a full-time basis, and Ms. Rojo indicated that she would be able to perform them unaided. She asked to be assigned to any of them. Ms. Luna told Ms. Rojo she would look into those possibilities and contact her soon after. However, neither Ms. Luna nor anyone from Sanderson responded, nor offered Ms. Rojo any work throughout June 2019.

23. On or about July 9, 2019, Ms. Rojo met with Ms. Gonzalez to present a new doctor's note with fewer restrictions. At this time, Ms. Rojo's physical limitations were simply to do no heavy lifting unless it was tolerable.

24. At the July 9 meeting, Ms. Gonzalez offered Ms. Rojo the position of Picking Room Employee in the Evisceration Department. This position required hanging and defeathering 35 six-pound chickens per minute. Ms. Rojo indicated that she was unsure whether this position would aggravate her injury, but she agreed to try this assignment.

25. For some time until July 26, 2019, Ms. Rojo worked in the Picking Room position, but it caused pain in her shoulder.

26. On or about July 26, 2019, Ms. Rojo met with HR representatives and asked to be assigned to a different position. Ms. Rojo explained that the work pace in the Picking Room assignment was faster than she expected, she was still recovering from her injuries, and the work was causing her pain and swelling in her hand. The HR representatives refused to allow Ms. Rojo to continue working in any assignment at that time. Instead, they instructed Ms. Rojo to visit her doctor and bring back a note with any update to her restrictions.

27. From the date of her injury on August 2, 2018 onward, Ms. Rojo had meetings with her supervisors wherein she complained that Sanderson was retaliating against her because of her injury and work restrictions. Ms. Rojo opposed this retaliatory conduct by complaining about the

conduct, pointing out that it was illegal, and by asserting her right to reasonable accommodations in her work and to benefits under her Employee Benefit Plan.

28. Since May of 2019, Sanderson has refused to give Ms. Rojo an appropriate accommodation or assignment. As a result, on or about July 30, 2019, Ms. Rojo filed a charge of discrimination with the EEOC based on disability discrimination.

29. Ms. Rojo visited her surgeon, Dr. Connally, and he issued a note dated July 26, 2019, recommending that Ms. Rojo not perform more than 100 movements per hour. Ms. Rojo presented that note to Sanderson.

30. On or about August 1, 2019, Ms. Rojo met with Sanderson Plant Manager Allen Laughlin and Ms. Gonzalez to discuss assignments that would accommodate her restrictions. Ms. Rojo identified a number of assignments she felt capable of performing unaided, including 1) at the "rework" station in the Overwrap Department (placing chicken on small plates or in plastic); 2) cleaning and peeling gizzards; and 3) gluing boxes in the Pre-Price Department. Mr. Laughlin rejected Ms. Rojo's proposal, stating that the rework position and gluing boxes would require more than 100 repetitive movements per hour, and that cleaning and peeling gizzards would require heavy lifting.

31. However, Ms. Rojo had previously been assigned to perform these assignments, so she was familiar with the physical requirements of each, and she knew they would accommodate her physical limitations. She knew that those repetitive movements would not strain her shoulders. She also knew that the gizzards position had not previously required heavy lifting.

32. On or about August 6, 2019, Ms. Rojo received an updated note from Doctor Rany Cherian with no limitation on repetitive movements, but simply a restriction on heavy lifting and allowing for normal duties as tolerated.

33. Ms. Rojo delivered the August 6 doctor's note to Ms. Gonzalez and Ms. Luna at Sanderson on August 7, 2019. Ms. Rojo again asked Ms. Gonzalez and Ms. Luna to be placed into any of the previously-identified positions that she knew she could perform, and which were now condoned by her doctor.

34. From August 7, 2019 until after November 10, 2020, Sanderson refused to allow Ms. Rojo to return to work at all, and refused to otherwise engage in the interactive process, despite Ms. Rojo continually expressing her availability to work in numerous assignments that would have accommodated her limitations in performing heavy lifting. Sanderson has retaliated against Ms. Rojo for her complaints and opposition to retaliation by refusing to schedule her to work at all, although there are positions and tasks which she is fully capable of performing.

35. Ms. Rojo's restrictions remained in place for the balance of 2019.

36. From August 7, 2019 until after November 10, 2020, Ms. Rojo communicated to Sanderson through their respective attorneys and through telephone messages, that she was ready to return to work. During this time, Sanderson did not claim that any of the assignments Ms. Rojo requested required heavy lifting. Instead, Sanderson claimed these assignments were not full-time positions, even though Ms. Rojo had worked in these assignments on a full time-basis in the past.

37. On July 30, 2019, Ms. Rojo filed a charge of disability discrimination with the EEOC and her Notice of Right to Sue was issued on August 21, 2020.

38. On November 10, 2020, Sanderson fired Ms. Rojo.

**FIRST CAUSE OF ACTION–DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE**

39. Ms. Rojo hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

40. The ADA prohibits an employer from discriminating against a qualified individual with a disability. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4.

41. Sanderson discriminated against Ms. Rojo in violation of 42 U.S.C. § 12112(b)(5) by failing to make reasonable accommodations to Ms. Rojo's known physical limitations.

42. Ms. Rojo is a person with an "actual" and a "record of" disability, as defined by the ADA Amendments Act of 2008, 42 U.S.C. § 12102(1), for the reasons set forth above. At all relevant times, Ms. Rojo had physical impairments that substantially limited one or more of her major life activities.

43. Ms. Rojo's shoulder injury substantially limited the functioning of her musculoskeletal system, and substantially limited her ability to lift, push, or pull, and to work in the broad range of jobs that require such ability. Her limitations spanned at least sixteen months, and would have lasted longer but for the surgery she underwent to repair the damage. Ms. Rojo experienced significant pain from everyday activities that gradually ameliorated over this period.

44. Ms. Rojo is a "qualified individual" within the meaning of 42 U.S.C. § 12111(8). Ms. Rojo was qualified to work in several different assignments in various departments at Sanderson because she had the knowledge, experience, and skills necessary to perform the essential functions of those assignments, and she had worked successfully in those assignments in the past. Indeed, Ms. Rojo received annual raises over her 20-year tenure and has no disciplinary history.

45. As a result of Sanderson's unlawful employment practices, Ms. Rojo's pay and hours worked were reduced to zero in July 2019, and Sanderson classified her as on leave without pay from that time until November 10, 2020.

46. As a result of Sanderson's unlawful employment practices, Ms. Rojo experienced lost wages and lost benefits of employment, and she has experienced emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. Sanderson's acts were done intentionally, and with reckless indifference to Ms. Rojo's rights.

## SECOND CAUSE OF ACTION–ADA RETALIATION

46. Ms. Rojo hereby incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

47. The ADA prohibits an employer from discriminating against an individual who opposes any act made unlawful by the ADA or because such individual files a charge of discrimination, assisted, or participated in an investigation or proceeding under the ADA. 42 U.S.C. § 12203(a). The ADA further prohibits an employer from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of, or on account of her having exercised or enjoyed any right granted or protected under the ADA. 42 U.S.C. § 12203(b).

48. Sanderson terminated Ms. Rojo after she 1) complained about its refusal to accommodate her disability, in violation of the ADA, 2) filed her charge of discrimination under the ADA, and 3) participated in the EEOC investigation of Sanderson's violation of the ADA.

49. As a result of the above, Sanderson caused harm to Ms. Rojo through Sanderson's retaliation and/or interference.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Rojo prays that this Court issue a judgement in her favor and that the Court order or award her the following:

   a. Injunctive relief;

   b. Back pay;

   c. Front pay;

   d. Compensatory damages;

    e.  Punitive damages;

    f.  Nominal damages;

    g.  Pre- and post-judgment interest, as provided by law;

    h.  Costs, litigation expenses, expert witness fees, and reasonable attorneys' fees; and

    i.  Such other and further relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Benjamin C. Yelverton
Benjamin C. Yelverton
*Attorney-in-Charge*
Texas State Bar No. 24084132
S.D. TX Bar No. 3645489
yelverton@scanesrouth.com
Joel S. Shields
Texas State Bar No. 24041907
S.D. TX Bar No. 39225
shields@scanesrouth.com
SCANES & ROUTH, LLP
7901 Fish Pond Road, Suite 200
P.O. Box 20965
Waco, Texas 76702-0965
Tel (254) 399-8788
Fax (254) 399-8780

Caitlin Boehne
Texas State Bar No. 24075815
S.D. TX Bar No. 3146004
cboehne@equaljusticecenter.org
EQUAL JUSTICE CENTER
314 E. Highland Mall Blvd., Ste. 401
Austin, Texas 78752
Tel (512) 474-0007, ext. 110
Fax (512) 474-0008

Shana Khader
Texas State Bar No. 24099860
S.D. TX Bar No. 3410646
skhader@equaljusticecenter.org
EQUAL JUSTICE CENTER
1250 W. Mockingbird Lane, #455
Dallas, TX 75247
Tel (469) 228-4233
Fax (469) 941-0861

**COUNSEL FOR PLAINTIFF LIBIA ROJO**

## CERTIFICATE OF SERVICE

 I hereby certify that on August 19, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and served an electronic copy of this pleading on all counsel of record via E-mail.

               /s/ *Benjamin C. Yelverton*
               Benjamin C. Yelverton